DANIEL L. WARSHAW (Bar No. 185365)
   dwarshaw@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

MELISSA S. WEINER (admitted *pro hac vice*)
   mweiner@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

JEFFREY KALIEL (Bar No. 238293)
   jkaliel@kalielpllc.com
SOPHIA GOLD (Bar No. 307971)
   sgold@kalielpllc.com
**KALIEL PLLC**
1875 Connecticut Ave. NW, 10th Floor
Washington, D.C.  20009
Telephone: (202) 350-4783
Facsimile: (202) 871-8180

[Additional Counsel on Signature Page]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| R.A., a minor, by and through his Guardian, Steve Altes, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>Epic Games, Inc.,<br><br>        Defendant. | CASE NO. 2:19-cv-01488-GW-E<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR TRANSFER**<br><br>Date:   July 11, 2019<br>Time:  8:30 AM<br>Crtrm.: 9D |

1

## **TABLE OF CONTENTS**

2
**Page**

3

4 INTRODUCTION ...................................................................................................1

5 FACTUAL BACKGROUND....................................................................................2

6 LEGAL STANDARD ..............................................................................................3

7 ARGUMENT ...........................................................................................................3

8

9 I.     The Court Should Not Compel Arbitration or Transfer this Action to
       the Eastern District of North Carolina Because the EULAs Are
10      Voidable and Have Been Disaffirmed ...........................................................3

11     A.     California Contract Law Applies in Analyzing Whether a Valid
              Contract Exists ....................................................................................3

12

13     B.     Even if R.A. Clicked "Accept" to the Terms of the EULAs, Any
              Alleged Contract is Voidable, and the Contract Have Been
14             Disaffirmed ........................................................................................5

15            1.     Contracts with Minors Are Voidable and Can Be
                     Disaffirmed ...............................................................................5
16

17            2.     The EULA is Voidable, and R.A. Disaffirmed It.......................7

18

19 II.    Even if the EULA Is Not Voidable, an Arbitration Provision Added
       After Litigation Is Commenced Is Not Enforceable .......................................9

20

21     A.     Epic's New Arbitration Agreement Only Applies to Disputes
              Arising After Acceptance...................................................................10

22

23     B.     Epic's Dissemination Of The Post-Filing EULA To Plaintiff And
              The Putative Class Members Is An Improper Communication...........13

24

25     C.     Even if the Court Considers the Post-Filing EULA, the Post-
              Filing EULA is Illusory .....................................................................14

26 III.   This Matter Should Not be Transferred to North Carolina .............................15

27 IV.    The Forum Selection Clause and Choice of Law Clause Must Be
       Considered Together in Evaluating the Validity and Enforceability of
28

the Forum Selection Clause.............................................................16

V.    Transfer Is Also Unwarranted Under the Public Interest Factors Set
      Forth in *Atlantic Marine*.................................................19

VI.   In the Absence of a Valid Forum Selection Clause, Transfer is Not
      Warranted Under the 1404 Factors ...................................21

      A.    Plaintiff is Entitled to His Choice of Forum .......................21

      B.    North Carolina Is Not A More Convenient Forum............................22

CONCLUSION.............................................................................25

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

1
2

<u>**TABLE OF AUTHORITIES**</u>

3

**Page(s)**

4

**Cases**

5
6

*Abdullah v. Abdullah*,
   50 Cal. App. 115 (1920) ............................................................................. 7

7
8

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
   666 F. Supp. 2d 1109 (C.D. Cal. 2009) ................................................... 21

9
10

*Am. Online, Inc. v. Superior Court*,
   90 Cal. App. 4th 1 (2001) ........................................................................ 17

11
12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ................................................................................... 3

13

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Of Texas*,
   571 U.S. 49 (2013) ............................................................................*passim*

14
15
16

*Balasanyan v. Nordstrom, Inc.*,
   Nos. 11-cv-2609-JM-WMC, 10-cv-2671-JM-WMC, 2012 WL
   760566 (S.D. Cal. Mar. 8, 2012) ............................................................. 13

17
18

*Bayol v. Zipcar, Inc.*,
   No. 14-CV-02483-TEH, 2014 WL 4793935 (N.D. Cal. Sept. 25,
   2014) ................................................................................................... 16, 19

19
20

*Berg v. Traylor*,
   148 Cal. App. 4th 809 (2007) ............................................................ 6, 7, 8

21
22

*Bobby Floars Toyota, Inc. v. Smith*,
   48 N.C. App. 580 (N.C. App. 1980) .......................................................... 6

23
24
25

*Butner v. Banco Mercantil Del Norte, S.E.*,
   No. CV0801764SJORZX, 2009 WL 10672324 (C.D. Cal. Apr. 7,
   2009) ........................................................................................................ 23

26

*Cable Tel Servs., Inc. v. Overland Contracting, Inc.*,
   574 S.E.2d 31 (N.C. Ct. App. 2002) ........................................................ 18

27
28

*Campos v. JPMorgan Chase Bank, NA*,
    No. 18-CV-06169-JSC, 2019 WL 827634 (N.D. Cal. Feb. 21, 2019)................. 5

*Cargill, Inc. v. WDS, Inc.*,
    No. 16-CV-00848, 2018 WL 1525352 (W.D.N.C. Mar. 28, 2018) .................... 19

*Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*,
    No. CV 03-5834-GHK ......................................................................... 23

*Celli v. Sports Car Club of Am., Inc.*,
    29 Cal. App. 3d 511 (1972) ............................................................. 7, 8

*Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*,
    No. 15-CV-02106-RS, 2015 WL 4463790 (N.D. Cal. July 21, 2015)................ 24

*In re Currency Conversion Fee Antitrust Litig.*,
    361 F. Supp. 2d 237 (S.D.N.Y. 2005) .................................................. 14

*Curtis v. GE Capital Corp.*,
    No. 5:12CV133-RLV, 2013 WL 4212932 (W.D.N.C. Aug. 15,
    2013) .............................................................................................. 15

*Dasher v. RBC Bank (USA)*,
    882 F.3d 1017 (11th Cir. 2018) ......................................................... 13

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
    885 F. Supp. 2d 894 (S.D. Ill. 2012) .................................................... 8

*Deck Records v. Brian Wilson*,
    No. CV0013312CBMAJWX, 2004 WL 7338992 (C.D. Cal. June
    16, 2004) ..................................................................................... 7, 8

*Deck v. Spartz, Inc.*,
    No. 2:11-CV-01123-JAM, 2011 WL 7775067 (E.D. Cal. Sept. 27,
    2011) ............................................................................................... 7

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009) .......................................................... 17

*E. & J. Gallo Winery v. F. & P. S.p.A.*,
    899 F. Supp. 465 (E.D. Cal. 1994) .................................................... 21

*In re Ferrero Litig.*,
    768 F. Supp. 2d 1074 (S.D. Cal. 2011) ........................................... 23, 25

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

*I.B. ex rel. Fife v. Facebook, Inc.*,
   905 F. Supp. 2d 989 (N.D. Cal. 2012)....................................................7

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ..........................................................................10

*Gastonia Pers. Corp. v. Rogers*,
   276 N.C. 279 (N.C. 1970) ...................................................................6

*Gelber v. Leonard Wood Mem'l For Eradication of Leprosy*,
   No. C 07-01785 JSW, 2007 WL 1795746 (N.D. Cal. June 21, 2007)...............23

*Getz v. Boeing Co.*,
   547 F. Supp. 2d 1080 (N.D. Cal. 2008)...............................................25

*Hampton Hardware v. Cotter & Co.*,
   156 F.R.D. 630 (N.D. Tex. 1994)........................................................14

*Hoffman v. Citibank (S. Dakota), N.A.*,
   546 F.3d 1078 (9th Cir. 2008) ...........................................................18

*Holliday v. Lifestyle Lift, Inc.*,
   No. C 09–4995 RS, 2010 WL 3910143 (N.D. Cal. Oct. 5, 2010) .....................22

*Hurley v. S. Cal. Edison Co.*,
   183 F.2d 125 (9th Cir. 1950) ...............................................................8

*Hypower, Inc. v. SunLink Corp.*,
   Case No. 14-cv-00740-THE, 2014 WL 1618379 (N.D. Cal. Apr. 21,
   2014) ...............................................................................................16

*Ingle v. Circuit City Stores, Inc.*,
   328 F.3d 1165 (9th Cir. 2003) ..............................................................4

*Int'l Bhd. of Teamsters, Local 396 v. NASA Servs., Inc.*,
   No. 2:18-CV-03681-SVW-E, 2019 WL 994012 (C.D. Cal. Jan. 16,
   2019) ................................................................................................3

*Invisible Stripes, LLC v. Virag*,
   No. C 09-01133 JSW, 2009 WL 1992125 (N.D. Cal. July 8, 2009) ...................21

*Javier v. Carnival Corp.*,
   No. 09cv2003-LAB, 2010 WL 3633173 (S.D. Cal. Sept. 13, 2010) ...................4

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

*Jimenez v. Menzies Aviation Inc*,
    No. 15-CV-02392-WHO, 2015 WL 4914727 (N.D. Cal. Aug. 17,
    2015) ........................................................................................................ 13

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ................................................................ 16, 21

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95 (2006) ............................................................................ 18, 19

*Lax v. Toyota Motor Corp.*,
    65 F. Supp. 3d 772 (N.D. Cal. 2014) ............................................ 22, 23, 24

*Le Baron v. Berryessa Cattle Co.*,
    78 Cal. App. 536 (1926) ............................................................................. 7

*Lloyd v. Navy Fed. Credit Union*,
    No. 17-CV-1280-BAS-RBB, 2018 WL 1757609 (S.D. Cal. Apr. 12,
    2018) ........................................................................................................ 18

*Long v. Fid. Water Sys., Inc.*,
    No. C-97-20118 RMW, 2000 WL 989914 (N.D. Cal. May 26, 2000) ............... 12

*Lopez v. Kmart Corp.*,
    No. 15-CV-01089-JSC, 2015 WL 2062606 (N.D. Cal. May 4, 2015) .......... 4, 5, 7

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) ................................................................... 19

*Miller v. Hearst Commc'ns., Inc.*,
    No. cv 12-0733-GHK, 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012) ............... 17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) .................................................................................. 17

*Mkt. Am., Inc. v. Chuanjie Yang*,
    No. 1:17CV897, 2018 WL 3406865 (M.D.N.C. July 12, 2018) .................... 15

*Moua v. Optum Servs., Inc.*,
    320 F. Supp. 3d 1109 (C.D. Cal. 2018) ..................................................... 15

*Neighborhood Spirit Prop. & Cas. Co. v. Watts Regulator Co.*,
    No. SACV150199DOCJCGX, 2015 WL 12912308 (C.D. Cal. Nov.
    9, 2015) ...................................................................................................... 3

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

*Nutracea v. Langley Park Invs. PLC*,
  No. 2:06-cv-2019-MCE-DAD, 2007 WL 135699 (E.D. Cal. Jan. 16,
  2007) ........................................................................................................ 16, 17

*O'Connor v. Uber Tech., Inc.*,
  No. 13-cv-3826 EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ................. 13

*U.S. ex rel. Oliver v. Parsons Co.*,
  195 F.3d 457 (9th Cir. 1999) ........................................................................... 5

*Omstead v. Dell, Inc.*,
  533 F. Supp. 2d 1012 (N.D. Cal. 2008) .......................................................... 16

*Paster v. Putney Student Travel, Inc.*,
  No. CV 99-2062 ............................................................................................. 8

*Peleg v. Neiman Marcus Group, Inc.*,
  204 Cal. App. 4th 1425 (2012) ................................................................. 14, 15

*Pereira v. Toscano*,
  84 Cal. App. 526 (1927) ................................................................................. 7

*Perry v. AT&T Mobility LLC*,
  No C 11-01488 SI, 2011 WL 4080625 (N.D. Cal. Sept. 12, 2011) .................... 17

*Peterson v. Nat'l Sec. Techs.*, *LLC*,
  No. 12-CV-5025-TOR, 2012 WL 3264952 (E.D. Wash. Aug. 9,
  2012) ........................................................................................................... 23

*Pokorny v. Quixtar, Inc.*,
  601 F.3d 987 (9th Cir. 2010) .......................................................................... 4

*Roling v. E*Trade Sec., LLC*,
  756 F. Supp. 2d 1179 (N.D. Cal. 2010) .......................................................... 22

*Russell v. Citigroup, Inc.*,
  748 F.3d 677 (6th Cir. 2014) .................................................................... 12, 13

*Russell v. De Los Suenos et al.*,
  No. 13-cv-2081-BEN (DHB), 2014 WL 1028882 (S.D. Cal. Mar.
  17, 2014) ...................................................................................................... 16

*Sessions v. Prospect Funding Holdings LLC*,
    No. CV1602620SJODTBX, 2017 WL 7156283 (C.D. Cal. July 13,
    2017) ............................................................................................ 17, 19

*Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*,
    No. 3:18-CV-01188-WHO, 2018 WL 3956430 (N.D. Cal. Aug. 17,
    2018) ..................................................................................................... 24

*SmithKline Beecham Corp. v. Abbott Labs.*,
    No. 1:15CV360, 2017 WL 1051123 (M.D.N.C. Mar. 20, 2017) ......................... 19

*Sonoda v. Amerisave Mortg. Corp.*,
    No. C-11-1803 EMC, 2011 WL 2653565 (N.D. Cal. July 6, 2011) .................... 22

*State v. Philip Morris USA Inc.*,
    363 N.C. 623, 685 S.E.2d 85 (2009) ................................................................ 15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ................................................................................. 10, 11

*T. K. v. Adobe Sys. Inc.*,
    No. 17-CV-04595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17,
    2018) ....................................................................................................... 7

*Trans-Tec Asia v. M/V Harmony Container*,
    518 F.3d 1120 (9th Cir. 2008) ..................................................................... 4

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ..................................................................... 20

*U.S. v. Acad. Mortg. Corp.*,
    No. 16-CV-02120-EMC, 2018 WL 4053484 (N.D. Cal. Aug. 24,
    2018) ................................................................................................. 23, 24

*Washington v. Cashforiphones.com*,
    No. 15-CV-0627-JAH (JMA), 2016 WL 6804431 (S.D. Cal. Feb.
    26, 2016) ................................................................................................ 19

*Waters v. Advent Prod. Dev., Inc.*,
    No. 07-cv-2089 BTM (LSP), 2008 WL 7683231 (S.D. Cal. June 26,
    2008) ...................................................................................................... 17

*Williams v. Securitas Sec. Serv. USA, Inc.*,
    No. 10-7181, 2011 WL 2713818 (E.D. Pa. July 13, 2011) .................................. 13

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

**Statutes**

28 U.S.C. § 1404 ............................................................................................ 21

Cal. Civ. Code § 1550 ...................................................................................... 5

Cal. Civ. Code § 1751 .................................................................................... 18

Cal. Civ. Code § 1780 .................................................................................... 18

Cal. Fam. Code § 6700 ................................................................................. 5, 7

Cal. Fam. Code § 6710 ................................................................................. 6, 8

Cal. Fam. Code § 6711 .................................................................................... 6

N.C. Gen. Stat. §§ 75-16 *et seq.* .................................................................. 18

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

1

## **INTRODUCTION**

2    Epic has created a predatory system whereby it profits, exorbitantly, from

3 tricking minors into purchasing "loot boxes" using unfair and deceptive marketing

4 and practices. In bringing this Motion to Compel Arbitration or Transfer

5 ("Motion"), Epic Games, Inc. ("Epic" or "Defendant") seeks to rely on fine print of

6 a disaffirmed contract to divest this Court of jurisdiction by compelling this case to

7 arbitration or sending it to a distant forum. But Epic's efforts to shield itself from

8 this Court's scrutiny fail.

9    First, Plaintiff, a minor, disaffirmed his purported "contracts" with Epic.

10 Under California law, R.A. is not bound by legal documents that the state has

11 decided he is simply too young to understand.  In devising a business model

12 centered around the exploitation of minors, Epic ran the risk that minors, including

13 R.A., would disaffirm its terms of service ("EULA"). R.A. hereby exercises his right

14 to do so. As a result, any purported "contract" R.A. made with Epic is invalid,

15 including the arbitration agreement and forum selection clause. The Court's analysis

16 can end there.

17    But even if the Court is inclined to analyze the substance of the EULAs, they

18 still do not compel arbitration here. To the extent the EULAs are relevant (Plaintiff

19 contends they are not), only the 2017 EULA must be analyzed. It is undisputed the

20 2017 EULA did not contain an arbitration provision, and the forum selection and

21 choice-of-law clauses are unenforceable for the reasons discussed below.

22    The fact that Epic added an arbitration provision to its 2019 EULA ("Post-

23 Filing EULA") two weeks after it waived service of Plaintiff's Complaint is of no

24 consequence to this case. Epic may not alter its terms of service (in a contract that

25 has been disaffirmed nonetheless) in an attempt to gain advantage *in litigation that*

26 *has already begun*. The Court should reject Epic's underhanded attempt to shift the

27 goalpost.

28    Finally, the Court should not enforce the forum selection clause because

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

1  doing so would contravene California public policy. Where, as here, a forum

2  selection clause and choice of law clause work in tandem to deprive California

3  consumers of their unwaivable rights under California law, California courts

4  routinely decline to transfer the action. This Court should do the same.

5  **FACTUAL BACKGROUND**

6  In October of 2017, R.A. downloaded and installed Fortnite at his home in

7  Valencia, California, with the help of his brother, who is also a minor, on his

8  personal computer. Declaration of R.A. ("R.A. Decl."), ¶ 2. R.A. used his father

9  Steve Altes' email address to create the Fortnite account, but his father was not

10  involved in creating the account. *Id.* at ¶ 3; *see also* Declaration of Steve Altes

11  ("Altes Decl."), ¶¶ 2-4.  Mr. Altes did not download or install the game. Altes Decl.,

12  ¶ 2.  Once installed, R.A. clicked through Epic's EULA. R.A. Decl., ¶ 4. R.A. did

13  not know what he was clicking through when he installed the game. *Id.* He did not

14  read or understand the 2017 or 2019 EULAs nor did he know that he was allegedly

15  supposed to ask his father's permission to click through the EULAs. *Id.* at ¶¶ 4, 5, 6,

16  8. Mr. Altes never clicked through nor agreed to the terms of the EULA in October

17  of 2017. Altes Decl., ¶ 2.  Further, he did not give R.A. permission to click "I

18  Accept" for the 2017 or 2019 EULAs. *Id.* at ¶ 3. Mr. Altes is unaware of any

19  safeguards in place that require his presence or acceptance of either of Epic's

20  EULAs. *Id.* at ¶ 5.

21  Plaintiff commenced this action on February 28, 2019. Compl., Dkt. No. 1.

22  Shortly after waiving service, in March of 2019, Defendant amended its EULA to

23  add an arbitration provision.  Motion at 4. In its Motion, Defendant claims that

24  "[t]he Altes Account user accepted the new EULA by first checking the box labeled

25  'I have read and agree with the End User License Agreement,' and then clicking the

26  button labeled 'Accept.'" Motion at 5. While R.A. does not remember clicking

27  though Epic's Post Filing EULA in March of 2019, R.A. knows that he was the only

28  one who could have clicked through because Fortnite was installed on R.A.'s

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

1  personal computer, and the account in question was and currently is only utilized by

2  R.A.  R.A. Decl., ¶ 7. Furthermore, Mr. Altes did not access R.A.'s account or

3  accept the March 2019 EULA at any time. Altes Decl., ¶ 3.

4       R.A. does not consent to arbitrate any of his claims and disaffirms both the

5  2017 and 2019 EULAs. R.A. Decl., ¶ 9.

6                              **LEGAL STANDARD**

7       "[A]rbitration is a matter of contract and a party cannot be required to submit

8  to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc.*

9  *v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citing *United Steelworkers*

10  *of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). When, as here, a

11  party contests the formation of an agreement to arbitrate a particular dispute, its

12  enforceability, or its applicability to a particular dispute, the court must resolve

13  those disputed issues. *Int'l Bhd. of Teamsters, Local 396 v. NASA Servs., Inc.*, No.

14  2:18-CV-03681-SVW-E, 2019 WL 994012, at *6 (C.D. Cal. Jan. 16, 2019) (citing

15  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)). "In

16  evaluating a motion to compel arbitration, courts treat the facts as they would when

17  ruling on a motion for summary judgment, construing all facts and reasonable

18  inferences that can be drawn from those facts in a light most favorable to the non-

19  moving party." *Neighborhood Spirit Prop. & Cas. Co. v. Watts Regulator Co.*, No.

20  SACV150199DOCJCGX, 2015 WL 12912308, at *3 (C.D. Cal. Nov. 9, 2015).

21                              **ARGUMENT**

22  I.    **The Court Should Not Compel Arbitration or Transfer this Action to the**

23        **Eastern District of North Carolina Because the EULAs Are Voidable and**

24        **Have Been Disaffirmed**

25        A.    **California Contract Law Applies in Analyzing Whether a Valid**

26              **Contract Exists**

27        California law applies in determining the formation and validity of Epic's

28  EULA. "A choice-of-law provision does not govern what law applies to determining

1   whether there is a contract in the first place." *See Trans-Tec Asia v. M/V Harmony*

2   *Container*, 518 F.3d 1120, 1124 (9th Cir. 2008). As the Ninth Circuit explained in

3   *Trans-Tec*, applying the choice-of-law provision to the formation analysis "put[s]

4   the barge before the tug" because it assumes the answer, that the contract containing

5   the choice-of-law provision was formed. *Id.* (internal quotations omitted). Rather,

6   formation is analyzed "as if there were no choice of law clause[.]" *Id; see also*

7   *Javier v. Carnival Corp.*, No. 09cv2003-LAB (WMc), 2010 WL 3633173, at *3

8   (S.D. Cal. Sept. 13, 2010) ("[T]he first task of a court asked to compel arbitration of

9   a dispute is to determine whether the parties agreed to arbitrate that dispute. As to

10  *that* task, obviously, the [contract's] choice of Panama law is irrelevant. To proceed

11  otherwise and actually consult Panamanian law on contract formation would be to

12  treat the [contract] as a valid agreement.") (internal quotation omitted) (emphasis in

13  original).

14      In evaluating the validity of contracts, particularly those containing arbitration

15  clauses, "federal courts 'should apply ordinary state-law principles that govern the

16  formation of contracts.'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th

17  Cir. 2003) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944

18  (1995)). In the absence of a choice of law provision, federal courts will use "the

19  choice-of-law rules of the forum state." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994

20  (9th Cir. 2010).[1] California courts apply the law of the state where the contract was

21  formed with respect to issues concerning contract formation. *See Lopez v. Kmart*

22  *Corp.*, No. 15-CV-01089-JSC, 2015 WL 2062606, at *4 (N.D. Cal. May 4, 2015)

23  (citing *Ingle*, 328 F.3d at 1170).[2] Here, the contract was formed in California.

24  _____

25  [1] The choice of law provision is inapplicable to evaluating the validity of the

26  contract for the additional, independent reason that questions of validity fall plainly
    outside of the provision's scope. *See* Farnsworth Decl., Dkt. No. 28, Ex. A at ¶ 11.

27  [2] In listing its reasons for applying California law to the contract, the court in *Lopez*

28  (footnote continued)

Plaintiff resides in California, downloaded and installed Fortnite in California, clicked through the terms of the EULAs in California, and brought suit in California. R.A. Decl. at ¶ 2. Accordingly, whether a valid contract exists should be analyzed under California law.[3]

### B. Even if R.A. Clicked "Accept" to the Terms of the EULAs, Any Alleged Contract is Voidable, and the Contract Have Been Disaffirmed

As detailed above, R.A., a minor, is the party who clicked through the EULA in October 2017 and again on March 18, 2017.  R.A. Decl. ¶ 2-8. Therefore, the EULAs are voidable and have been disaffirmed. R.A. has disaffirmed them by filing this action, and for the avoidance of doubt, disaffirms again with the filing of the present Opposition and accompanying Declaration. *Id.* at ¶ 9.

### 1. Contracts with Minors Are Voidable and Can Be Disaffirmed

For a contract to exist under California law, there should be: "1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and, 4. A sufficient cause or consideration."  Cal. Civ. Code § 1550; *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999). Minors are capable of contracting "in the same manner as an adult, *subject to the power of disaffirmance*." Cal. Fam. Code § 6700

---

looked at where plaintiff resided, where plaintiff reviewed the contract, and defendant's ties to plaintiff's state.  *Lopez*, 2015 WL 2062606, at *4 n.1.

[3] Notably, Defendant appears to agree that California law applies to the formation and validity of the EULA by primarily relying on California law in its sections regarding Plaintiff's agreement to the EULA, which means the Court should likewise apply California law. *See* Motion at 9-12; *Campos v. JPMorgan Chase Bank, NA*, No. 18-CV-06169-JSC, 2019 WL 827634, at *4 (N.D. Cal. Feb. 21, 2019) (applying California law because "both parties apply California law to their respective arguments as to the existence of a valid arbitration agreement").

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

(emphasis added).[4] A minor may disaffirm a contract at any time "before majority or within a reasonable time afterwards." Cal. Fam. Code § 6710.[5]

The power of disaffirmance exists due to strong policy considerations protecting minors:

> The law shields minors from their lack of judgment and experience and under certain conditions vests in them the right to disaffirm their contracts.  Although in many instances such disaffirmance may be a hardship upon those who deal with an infant, the right to avoid his contracts is conferred by law upon a minor for his protection against his own improvidence and the designs of others.  It is the policy of the law to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant.  Any loss occasioned by the disaffirmance of a minor's contract might have been avoided by declining to enter into the contract.

*Berg v. Traylor*, 148 Cal. App. 4th 809, 818 (2007) (quotations omitted). "Simply stated, one who provides a minor with goods and services does so at her own risk." *Id.* at 816 (citing *Goldberg v. Superior Court*, 23 Cal. App. 4th 1378, 1382–1383 (1994)).

---

[4] There are only three exceptions, and none apply here. *See* Cal. Fam. Code § 6711 ("A minor cannot disaffirm an obligation, otherwise valid, entered into by the minor under the express authority or direction of a statute."); § 6712 (minor may not disaffirm contract "to pay the reasonable value of things necessary for the support of the minor or the minor's family" when certain conditions are met); § 6713 (minor cannot recover goods they sold if good have been transferred to another good-faith purchaser).

[5] Even if the Court applies North Carolina law to the issue of voidability, the Court will arrive at the same conclusion. *Bobby Floars Toyota, Inc. v. Smith*, 48 N.C. App. 580, 582 (N.C. App. 1980) ("It is well settled that the conventional contracts of an infant, except those for necessities and those authorized by statute, are voidable at the election of the infant and may be disaffirmed by the infant during minority or within a reasonable time after reaching majority."); *Gastonia Pers. Corp. v. Rogers*, 276 N.C. 279, 282 (N.C. 1970).

A minor may disaffirm a voidable contract "by action as well as by declaration." *Bruce Morgan, dba Deck Records v. Brian Wilson*, No. CV0013312CBMAJWX, 2004 WL 7338992, at *4 (C.D. Cal. June 16, 2004) (citing *Celli v. Sports Car Club of Am., Inc.*, 29 Cal. App. 3d 511, 517 (1972)). "Express notice to the other party is unnecessary." *Berg*, 148 Cal. App. 4th at 820. "The filing of an action is sufficient." *Celli*, 29 Cal. App. 3d at 517; *see also Lopez*, 2015 WL 2062606, at *5 ("[F]iling the instant action was sufficient to disaffirm the contract."); *Pereira v. Toscano*, 84 Cal. App. 526, 531 (1927) ("[C]ommencement of [the] action constituted a sufficient notice of disaffirmance."); *Abdullah v. Abdullah*, 50 Cal. App. 115, 119 (1920) ("[T]he filing of the action for a recovery upon quantum meruit would be a sufficient notice to the defendant of a disaffirmance.").

"[D]isaffirmation by a minor rescinds the entire contract, rendering it a nullity." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D. Cal. 2012) (citing *Scollan v. Gov't Emp. Ins. Co.*, 222 Cal. App. 2d 181 (1963)). Indeed, a minor may disaffirm a contract even for services already rendered and is not required to restore any consideration after disaffirming the contract. *Deck v. Spartz, Inc.*, No. 2:11-CV-01123-JAM, 2011 WL 7775067, at *7 (E.D. Cal. Sept. 27, 2011). An action for disaffirmation is one in equity, governed in many respects by the rules relating to rescission of contracts, and "the trial court is vested with a broad discretion to see that equity is done." *Le Baron v. Berryessa Cattle Co.*, 78 Cal. App. 536, 548 (1926).

### 2.    The EULA is Voidable, and R.A. Disaffirmed It

Per the well-settled law detailed above, Epic's contract with R.A., a minor, is voidable. Applying Cal. Fam. Code § 6700 and the corresponding case law, the entire EULA is voidable, including the arbitration provision and forum selection clause. *See T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018); *Lopez*, 2015 WL 2062606; *I.B. ex rel. Fife*, 905 F. Supp.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

2d at 1000.[6] Voidablity of the entire agreement comports with the plain language and the intended purpose of California law, which liberally permits minors to disaffirm contracts. *See* Cal. Fam. Code § 6700 *et seq.* R.A., as a minor, was unable to fully understand the legal implications of the EULA. R.A. Decl. at ¶ 5, 8. For this reason, as well as others, the protection sought in this case falls squarely within the spirit and letter of the California Family Code, which shields minors from contracts designed at their peril. *See* Cal. Fam. Code §§ 6700 *et seq.* In sum, Epic chose to contract with—and profit from—minors at its own risk. *Berg*, 148 Cal. App. 4th at 818. It cannot purport to bind those minors, including R.A., to its exculpatory fine print.

To the extent a contract was entered into between Epic and R.A. in 2017, R.A. disaffirmed the 2017 EULA by filing the underlying complaint. Compl., Dkt. No. 1. This meets the settled standard for a minor to disaffirm a voidable contract. *See Celli*, 29 Cal. App. 3d at 517.[7] Further, to the extent the 2019 Post-Filing EULA is even relevant to this case (it is not), R.A. hereby disaffirms that EULA too. *See* R.A. Decl. at ¶ 9. *Deck Records*, 2004 WL 7338992, at *4 (minor may disaffirm a contract through a declaration).

Epic may argue that R.A. may not disaffirm its 2019 EULA because of the following provision:

---

[6] *Paster v. Putney Student Travel, Inc.*, No. CV 99-2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999), and *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894 (S.D. Ill. 2012), are distinguishable. Both cases focus solely on the enforceability of a forum-selection clause within the contract and when the minor did not seek to nullify the entirety of the contract, which Plaintiff does here.

[7] Epic may try to argue R.A. waited too long before disaffirming the contract. That argument is specious. A minor may disaffirm a contract *at any time*; the only temporal limitation is that the disaffirmation must occur "before majority or within a reasonable time afterwards [reaching the age of majority]." Cal. Fam. Code § 6710; *Hurley v. S. Cal. Edison Co.*, 183 F.2d 125, 132 (9th Cir. 1950).

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

TO ENTER INTO THIS LICENSE AGREEMENT, YOU MUST BE AN ADULT OF THE LEGAL AGE OF MAJORITY IN YOUR COUNTRY OF RESIDENCE. YOU ARE LEGALLY AND FINANCIALLY RESPONSIBLE FOR ALL ACTIONS USING OR ACCESSING OUR SOFTWARE, INCLUDING THE ACTIONS OF ANYONE YOU ALLOW TO ACCESS TO YOUR ACCOUNT. YOU AFFIRM THAT YOU HAVE REACHED THE LEGAL AGE OF MAJORITY, UNDERSTAND AND ACCEPT THIS AGREEMENT (INCLUDING ITS DISPUTE RESOLUTION TERMS). IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY, YOUR PARENT OR LEGAL GUARDIAN MUST CONSENT TO THIS AGREEMENT.

Ex. B at 1.[8]

But fine print cannot save fine print. Any argument here is cyclical: R.A. may disaffirm the 2019 EULA, including the aforementioned provision, for all of the same reasons he can disaffirm the 2017 EULA. To the extent Epic argues that R.A. should not have clicked "Accept" if he was not an adult, it is of no importance—as explained above, a minor's power to disaffirm a contract is statutory. If anything, this provision demonstrates R.A. could not have entered into the Post-Filing EULA, meaning no contract was formed at all, and Epic cannot enforce it.

Accordingly, the entire EULA is voidable and has been disaffirmed by R.A. The arbitration clause (which for reasons stated below is unenforceable as a matter of law regardless of the disaffirmance), choice-of-law and choice-of-venue provisions contained within the EULAs are not applicable, and this case must proceed on the pleadings.

## II. Even if the EULA Is Not Voidable, an Arbitration Provision Added After Litigation Is Commenced Is Not Enforceable

---

[8] Notably, no similar provision existed in the 2017 EULA. *See* Farnsworth Decl., Dkt. No. 28, Ex. A.

1    For the reasons stated above, the 2017 (and the Post-Filing EULA to the

2    extent the Court finds it relevant to this Motion), is voidable and unenforceable.

3    However, even if the Court examines the applicability of the 2017 EULA or the

4    Post-Filing EULA, neither command arbitration in this matter.

5    When Plaintiff initiated this lawsuit on February 28, 2019, the EULA did **not**

6    contain an arbitration provision. *See* Farnsworth Decl., Ex. A. Epic added an

7    arbitration provision to the EULA on March 18, 2019—two weeks *after* Defendant

8    waived service in the present action. *See* Dkt. No. 14; Farnsworth Decl., Dkt. No.

9    28, Ex. B. Epic's post-filing imposition of an arbitration provision is predatory and

10   unenforceable under the law, as Epic may not modify its terms of services to evict a

11   pending lawsuit from court.

12   First, the plain language of the Post-Filing EULA makes clear that Epic only

13   intended for the agreement to apply *prospectively*.

14   Second, if Epic's attorneys intended for the Post-Filing EULA to apply to this

15   case, its dissemination to Plaintiff and putative class members is an improper

16   communication.

17   Third, to the extent Epic granted itself contractual authority to retroactively

18   apply the Post-Filing EULA to disputes already initiated, such a modification was

19   either a breach of the covenant of good faith and fair dealing or rendered the EULA

20   illusory.

21   For these reasons, the Court should find that the Post-Filing EULA is

22   inapplicable in this case and deny Defendant's Motion.

23   **A.    Epic's New Arbitration Agreement Only Applies to Disputes**

24   **Arising After Acceptance**

25   "[A]rbitration is a matter of consent, not coercion[.]" *Stolt-Nielsen S.A. v.*

26   *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (internal quotations omitted).

27   When interpreting an agreement to arbitrate, courts must "give effect to the

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**
**TO COMPEL ARBITRATION OR TRANSFER**

1  contractual rights and expectations of the parties." *Id*. at 682. "As with any other

2  contract, the parties' intentions control." *Id*.

3      Critically, neither the October 2017 EULA nor the Post-Filing EULA state

4  that future changes to the EULA apply retroactively. The October 2017 EULA

5  states only that it may be modified at any time:

6      <u>Epic may issue an amended Agreement, Terms of Service, or Privacy</u>
7      <u>Policy at any time in its discretion</u> by posting the amended Agreement,
    Terms of Service, or Privacy Policy on its website or by providing you
8      with digital access to amended versions of any of these documents
    when you next access the Software. If any amendment to this
9      Agreement, the Terms of Service, or Privacy Policy is not acceptable to
10      you, you may terminate this Agreement and must stop using the
    Software. <u>Your continued use of the Software will demonstrate your</u>
11      <u>acceptance of the amended Agreement</u> and Terms of Service as well as
12      your acknowledgement that you have read the amended Privacy Policy.

13

14  Farnsworth Decl., Dkt. No. 28, Ex. A. at 7 (emphasis added). Likewise, the Post-

15  Filing EULA does not state that any purported agreement to arbitrate applies to

16  disputes already at issue.

17      THIS AGREEMENT CONTAINS A BINDING, INDIVIDUAL
    ARBITRATION AND CLASS-ACTION WAIVER PROVISION. IF
18      YOU ACCEPT THIS AGREEMENT, <u>YOU AND EPIC AGREE TO</u>
19      <u>RESOLVE DISPUTES IN BINDING, INDIVIDUAL</u>
    <u>ARBITRATION AND GIVE UP THE RIGHT TO GO TO COURT</u>
20      INDIVIDUALLY OR AS PART OF A CLASS ACTION, AND EPIC
21      AGREES TO PAY YOUR ARBITRATION COSTS FOR ALL
    DISPUTES OF UP TO $10,000 THAT ARE MADE IN GOOD
22      FAITH (SEE SECTION 12). YOU HAVE A TIME-LIMITED RIGHT
23      TO OPT OUT OF THIS WAIVER.

24      You and Epic agree to submit all Disputes between You and Epic to
25      individual binding arbitration. "Dispute" means any dispute, claim, or
26      controversy (except those specifically exempted below) between You
    and Epic that relates to your use or attempted use of Epic's products or
27      services and Epic's products and services generally, including without

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

limitation the validity, enforceability, or scope of this Binding Individual Arbitration section.

Farnsworth Decl., Dkt. No. 28, Ex. B at 1, 11 (emphasis added).

Further illustrating that Epic did not intend any retroactive application of the Post-Filing EULA, the terms acknowledge that, future changes to the Post-Filing EULA *will not apply retroactively*:

> Future Arbitration Changes. Although Epic may revise this Agreement in its discretion, <u>Epic does not have the right to alter this agreement to arbitrate or the rules specified herein with respect to any Dispute once that Dispute arises.</u>

Farnsworth Decl., Dkt. No. 28, Ex. B at 13 (emphasis added).

Reading the contract as a whole, it is plain that the parties did not intend for the Post-Filing EULA to apply retroactively. Most obviously, the agreement uses the present tense, stating that consumers "give up the right *to go to* court" not "to remain in court." In a similar circumstance, the Sixth Circuit held that an arbitration provision added after litigation had commenced did "not evict the pending lawsuit from court" in part because the agreement did not indicate it applied retroactively. The court relied, in part, on the fact that the arbitration agreement was written in the present tense, applying only to disputes that "arise between you and Citi" and not to disputes that "arose" or "have arisen." *Russell v. Citigroup, Inc.*, 748 F.3d 677, 679 (6th Cir. 2014). The court further inferred that because the communication was directed to the plaintiff himself, rather than through plaintiff's counsel, Citi must not have intended the communication to affect the ongoing lawsuit, or else such a communication could give rise to an ethical violation. *Id.* at 680.

Here, like in *Russell*, the Post-Filing EULA is written in the present tense and makes no reference to *previous* disputes that are already pending in court. The Court should therefore interpret the agreement to apply to only future disputes. *See Long v. Fid. Water Sys., Inc.*, No. C-97-20118 RMW, 2000 WL 989914, at *4 (N.D. Cal.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

1   May 26, 2000) (declining to compel arbitration when the defendant added

2   arbitration after litigation began because the clause, fairly read, did not apply to

3   existing claims).

4       **B.      Epic's Dissemination Of The Post-Filing EULA To Plaintiff And**

5              **The Putative Class Members Is An Improper Communication**

6       Furthermore, the Court should acknowledge policy reasons for not

7   encouraging a defendant's communication with plaintiffs in a pending matter.

8   Following notice and service of a class action lawsuit in the Central District of

9   California, Epic attempted to change its entire dispute resolution procedure and

10  apply it retroactively. As the Sixth Circuit in *Russell* pointed out, if a party's "in-

11  house counsel prepared a contract, expecting it to be given to a represented litigant

12  but also expecting it to govern existing cases, they might find themselves near the

13  edge of [an ethical] rule." *Russell*, 748 F.3d at 680 (6th Cir. 2014); *see also Dasher*

14  *v. RBC Bank (USA)*, 882 F.3d 1017, 1024 (11th Cir. 2018) (quoting *Russell* and

15  declining to compel arbitration when arbitration was added to account agreements

16  after litigation had already begun).

17      For this reason—especially in the class action context where class member

18  communication is implicated—courts routinely exercise their discretion to invalidate

19  or refuse to enforce retroactive arbitration agreements implemented while a case is

20  pending. *See, e.g.*, *Balasanyan v. Nordstrom, Inc.*, Nos. 11-cv-2609-JM-WMC, 10-

21  cv-2671-JM-WMC, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012) (declining to enforce

22  individual arbitration agreement in class action where defendant's implementation

23  of arbitration agreement was an improper class communication); *Jimenez v. Menzies*

24  *Aviation Inc*, No. 15-CV-02392-WHO, 2015 WL 4914727, at *6 (N.D. Cal. Aug.

25  17, 2015) (same); *O'Connor v. Uber Tech., Inc.*, No. 13-cv-3826 EMC, 2013 WL

26  6407583, at *7 (N.D. Cal. Dec. 6, 2013) (invalidating arbitration agreement imposed

27  before class certification); *Williams v. Securitas Sec. Serv. USA, Inc.*, No. 10-7181,

28  2011 WL 2713818, at *1 (E.D. Pa. July 13, 2011) (refusing to enforce arbitration

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**
**TO COMPEL ARBITRATION OR TRANSFER**

1 agreement imposed during pendency of putative class action); *In re Currency*
2 *Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252-54 (S.D.N.Y. 2005)
3 (refusing to enforce arbitration agreement instituted after putative class action was
4 filed as it might mislead class members); *see also Hampton Hardware v. Cotter &*
5 *Co.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994) (noting that defendant's communications
6 affecting a class member's decision to participate in the litigation are improper). To
7 the extent the Court considers the Post-Filing EULA, the Court should follow the
8 holdings listed above.

9  **C.   Even if the Court Considers the Post-Filing EULA, the Post-Filing**
10  **EULA is Illusory**

11      Finally, even if the EULA allowed Epic to make changes retroactively, Epic's
12 exercise of such unfettered power is either a breach of the covenant of good faith
13 and fair dealing or renders the EULA illusory. In *Peleg v. Neiman Marcus Group,*
14 *Inc.*, 204 Cal. App. 4th 1425, 1433 (2012), the California Court of Appeal held that
15 a contract was illusory when the employer retained the right to modify the
16 arbitration provision retroactively. The court analyzed both Texas and California
17 law and held that an arbitration provision may not be amended to ongoing disputes
18 to make it "more likely the [defendant] would prevail."

19      [W]e determine that **an arbitration contract containing a**
20      **modification provision is illusory if an amendment, modification,**
      **or revocation—a contract change—applies to claims that have**
21      **accrued or are known** to the employer**.** If a modification provision is
      restricted—by express language or by terms implied under the covenant
22      of good faith and fair dealing—so that it exempts *all* claims, accrued or
23      known, from a contract change, the arbitration contract is not
      illusory. **Were it otherwise, the employer could amend the contract**
24      **in anticipation of a specific claim, altering the arbitration process**
      **to the employee's detriment and making it more likely the**
25      **employer would prevail.** The employer could also terminate the
26      arbitration contract altogether, opting for a judicial forum if that
      seemed beneficial to the company.
27      [. . .]
28

14

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**
**TO COMPEL ARBITRATION OR TRANSFER**

The vice of the modification provision in this case is that it allows the employer to manipulate the arbitration process, tailoring it to fit specific cases, either by making the process more difficult or more expensive for the employee, or by revoking the Agreement in the belief that a judicial forum is preferable. **Accordingly, if a claim has accrued or if the employer knows about a claim, all parties to the Agreement should be bound by the version in effect at that time; no changes should apply after the point of accrual or knowledge.**

*Peleg*, 204 Cal. App. 4th at 1433, 1459 (emphasis added); *see also Moua v. Optum Servs., Inc.*, 320 F. Supp. 3d 1109, 1114 (C.D. Cal. 2018).

The law is the same in North Carolina. *See Curtis v. GE Capital Corp.*, No. 5:12CV133-RLV, 2013 WL 4212932, at *4 (W.D.N.C. Aug. 15, 2013) (arbitration provision not illusory only because it did not apply retroactively); *Mkt. Am., Inc. v. Chuanjie Yang*, No. 1:17CV897, 2018 WL 3406865, at *8 (M.D.N.C. July 12, 2018) (Declining to find an arbitration provision illusory only because "a court will not interpret the arbitration clause to allow [a party] to avoid the dispute resolution process by altering its terms"); *State v. Philip Morris USA Inc.*, 363 N.C. 623, 685 S.E.2d 85, 86 (2009) (Noting a promise is illusory if the promisor "reserve[s] an unlimited right to determine the nature or extent of performance."). Accordingly, regardless of whether California or North Carolina law governs the analysis, to avoid the finding of an illusory contract, Epic should be "bound by the version [of the EULA] in effect at [the time the Complaint was filed.]" *See Peleg*, 204 Cal. App. 4th at 1459.

## III.   This Matter Should Not be Transferred to North Carolina

Ordinarily, a district court considering a § 1404(a) motion has broad discretion to either retain or transfer a civil action based on the "convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49, 62 (2013) ("Atlantic Marine"). When a party requests transfer based on a forum selection clause, the court must first establish that the clause is valid.  *See id.* at 62 n.5 ("Our analysis presupposes a

1    contractually valid forum-selection clause."); *Russell v. De Los Suenos et al.*, No.

2    13-cv-2081-BEN (DHB), 2014 WL 1028882, at *6 (S.D. Cal. Mar. 17, 2014)

3    (holding that because the *Atlantic Marine* analysis is "predicated on the basic

4    assumption that the clause is valid," the district courts "must therefore consider

5    arguments that the clause is invalid").

6         While forum selection clauses are regularly presumed valid, "both the

7    Supreme Court and the Ninth Circuit have recognized an exception to that general

8    rule when the contractual choice-of-forum law would contravene a strong public

9    policy of the forum in which suit is brought, whether declared by statute or by

10   judicial decision." *Nutracea v. Langley Park Invs. PLC*, No. 2:06-cv-2019-MCE-

11   DAD, 2007 WL 135699, at *2 (E.D. Cal. Jan. 16, 2007) (citing *M/S Bremen v.*

12   *Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) and *Jones v. GNC Franchising, Inc.*,

13   211 F.3d 495, 497 (9th Cir. 2000)).

14        Where the district court is assured that the forum selection clause is valid, it

15   may then "consider arguments about public-interest factors only." *Atl. Marine*, 571

16   U.S. at 64; *Hypower, Inc. v. SunLink Corp.*, Case No. 14-cv-00740-THE, 2014 WL

17   1618379, at *7 (N.D. Cal. Apr. 21, 2014) ("*Atlantic Marine* emphasize[s] the

18   importance of the public-interest factors").

19   **IV.   The Forum Selection Clause and Choice of Law Clause Must Be**

20        **Considered Together in Evaluating the Validity and Enforceability of the**

21        **Forum Selection Clause**

22        California courts will not enforce forum selection clauses if doing so would

23   contravene California public policy. *See Jones*, 211 F.3d at 497. In California,

24   "where both a forum-selection clause and a choice-of-law clause are at issue, the

25   question of the enforceability of the forum-selection clause is 'inextricably bound

26   up' in the question of the validity of the choice-of-law provision." *Omstead v. Dell,*

27   *Inc.*, 533 F. Supp. 2d 1012, 1034 (N.D. Cal. 2008) (citing *Hall v. Super. Court*, 150

28   Cal. App. 3d 411, 416 (1983)); *see also Bayol v. Zipcar, Inc.*, No. 14-CV-02483-

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

1  TEH, 2014 WL 4793935, at *2 (N.D. Cal. Sept. 25, 2014) ("It is clear that the Court

2  *can* consider the combined effect of forum selection and choice of law clauses.");

3  *Sessions v. Prospect Funding Holdings LLC*, No. CV1602620SJODTBX, 2017 WL

4  7156283, at *3 (C.D. Cal. July 13, 2017) (same).

> The reason for considering them together [is] that absent a choice of
> law clause, the selected forum could apply California law to the dispute
> under the selected forum's conflict of laws principles. If so, there
> would be no risk that substantive law might be employed which would
> materially diminish rights of California residents in violation of
> California public policy.

10  *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 13 (2001), as modified (July

11  10, 2001). The Ninth Circuit approved of California's comingled choice of law and

12  forum selection clause analysis where, as here, application of forum law specified in

13  a choice of law provision could have waived consumers' rights under California's

14  Consumers Legal Remedies Act ("CLRA").  *Doe 1 v. AOL LLC*, 552 F.3d 1077,

15  1084 (9th Cir. 2009); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*

16  *Inc.*, 473 U.S. 614, 637 n.19 (1985) ("We merely note that in the event the choice-

17  of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a

18  party's right to pursue statutory remedies for antitrust violations, we would have

19  little hesitation in condemning the agreement as against public policy.") (quoting the

20  District Court, below); *Waters v. Advent Prod. Dev., Inc.*, No. 07-cv-2089 BTM

21  (LSP), 2008 WL 7683231, at *8-10 (S.D. Cal. June 26, 2008) (considering both

22  choice of law and forum selection clauses in the forum selection clause

23  enforceability analysis); *Nutracea*, 2007 WL 135699, at *2-3 (same); *Miller v.*

24  *Hearst Commc'ns., Inc.*, No. cv 12-0733-GHK (PLAx), 2012 WL 3205241, at *2-3

25  (C.D. Cal. Aug. 3, 2012) (same); *Perry v. AT&T Mobility LLC*, No C 11-01488 SI,

26  2011 WL 4080625, at *4 (N.D. Cal. Sept. 12, 2011) (same).

27      If this case were transferred to the Eastern District of North Carolina, North

28  Carolina choice of law rules would apply. *See Atl. Marine*, 571 U.S. at 65 (holding

that when a case is transferred pursuant to a valid forum selection clause, the choice of law rules of the transferee court apply). North Carolina, like California, enforces choice of law provisions unless "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue <u>and which</u>, under the rule of § 188, <u>would be the state of applicable law in the absence of an effective choice of law by the parties</u>." *Cable Tel Servs., Inc. v. Overland Contracting, Inc.*, 574 S.E.2d 31, 34 (N.C. Ct. App. 2002) (emphasis added); *see also Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1085 (9th Cir. 2008).

While the first part of this analysis would be the same in both North Carolina and California—whether application of the choice of law provision would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state—the last step in this analysis—which state's law would apply in the *absence* of an effective choice of law provision—differs depending on whether a California court applies California choice of law rules or a North Carolina court applies North Carolina choice of law rules.[9]

California follows a "comparative impairment" approach to choice of law questions. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 124 (2006).

---

[9] With respect to the first step, both a North Carolina court and a California court would likely hold that the choice of law provision conflicts with a fundamental policy of the state of California, which has a materially greater interest in the action as the home state of all putative class members. *See* Cal. Civ. Code § 1751 (Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void); *Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609, at *5 (S.D. Cal. Apr. 12, 2018) (declining to apply Virginia choice of law clause to Plaintiff's statutory claims because doing so conflicted with fundamental policies of the state of California). Amongst the differences between the statutes, North Carolina's consumer protection statute, unlike California's, does not provide for statutory damages or punitive damages. *Compare* N.C. Gen. Stat. §§ 75-16 *et seq. with* Cal. Civ. Code § 1780.

1   Under this approach, California law would apply as the state whose interest would

2   be comparatively more impaired if its consumer protection statutes did not apply to

3   its consumers. *See id*.

4        In North Carolina, however, the analysis differs.  North Carolina courts often

5   apply *lex loci* to unfair and deceptive practices claims. *See SmithKline Beecham*

6   *Corp. v. Abbott Labs.*, No. 1:15CV360, 2017 WL 1051123, at *7 (M.D.N.C. Mar.

7   20, 2017).  And, a North Carolina court may consider the place of the injury to be in

8   North Carolina—the place where Plaintiff and class members paid Epic. *See*

9   *Cargill, Inc. v. WDS, Inc.*, No. 16-CV-00848, 2018 WL 1525352, at *8 (W.D.N.C.

10  Mar. 28, 2018).

11       Thus, in evaluating the enforceability of the choice of law provision, a

12  California court, applying California choice of law rules, is more likely to invalidate

13  the choice of the law provision and apply its own law than a North Carolina court

14  under North Carolina choice of law rules. And, because the forum selection clause

15  and choice of law provision work in tandem to waive unwaivable rights of

16  California consumers, they are invalid. *See Sessions*, 2017 WL 7156283, at *3; *see*

17  *also Washington v. Cashforiphones.com*, No. 15-CV-0627-JAH (JMA), 2016 WL

18  6804431, at *3 (S.D. Cal. Feb. 26, 2016); *Bayol*, 2014 WL 4793935, at *2.

19  **V.   Transfer Is Also Unwarranted Under the Public Interest Factors Set**

20         **Forth in *Atlantic Marine***

21       Even if this Court were to find that the forum selection clause is valid (it is

22  not), transfer is still unwarranted. Even with a valid forum selection clause, *Atlantic*

23  *Marine* dictates that this Court consider various public interest factors, all of which

24  cut against transfer in this case. *Atl. Marine*, 571 U.S. at 62. These public interest

25  factors include (1) the local interest in the lawsuit; (2) the court's familiarity with

26  governing law; (3) burden on local courts and juries; (4) congestion in the court; and

27  (5) the costs of resolving a dispute unrelated to this forum. *Lueck v. Sundstrand*

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

1  *Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001) (citing *Piper Aircraft Co. v. Reyno*, 454
2  U.S. 235, 259-61 (1981)).

3      In considering the first factor, courts look exclusively to the local forum's
4  interest in the litigation. *See Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163,
5  1182 (9th Cir. 2006) ("with this interest factor, we ask only if there is an identifiable
6  local interest in the controversy, not whether another forum also has an interest").
7  California clearly has a significant interest in this case. Plaintiff is a citizen of
8  California and resident of this district and was injured by Defendant's conduct while
9  residing in California.

10      Second, no doubt this Court will be far more experienced with the nuances of
11  Plaintiff's CLRA, UCL, and FAL claims than a court in the Eastern District of
12  North Carolina.

13      Third, it is more appropriate to burden the citizens of California than those of
14  North Carolina concerning a controversy involving a California resident, injured in
15  California, who brings claims under California law on behalf of a California
16  subclass.

17      Next, with respect to court congestion, while the overall number of cases is
18  less in the Eastern District of North Carolina, the median time interval for cases is
19  longer.[10] This factor is at the very least neutral.

20      Finally, the last factor is irrelevant here, as this action is certainly related to
21  this forum.

22

23

24

---

25  [10] The median time interval for all cases is 5.0 months in the Central District of
26  California and 9.6 in the Eastern District of North Carolina. *See*
27  http://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-
statistics/2018/03/31 (last visited June 16, 2019).

28

1    Therefore, even assuming the forum selection clause were valid, under the

2    public interest factors set forth in *Atlantic Marine*, this case should not be

3    transferred.

4    **VI.    In the Absence of a Valid Forum Selection Clause, Transfer is Not**

5    **Warranted Under the 1404 Factors**

6    Finally, in the absence of a valid forum selection clause, transfer is not

7    warranted under 28 U.S.C. § 1404. Section 1404, provides that "[f]or the

8    convenience of parties and witnesses, in the interest of justice, a district court may

9    transfer any civil action to any other district or division where it might have been

10   brought." 28 U.S.C. § 1404. The determination of whether to transfer an action

11   pursuant to Section 1404 is within the discretion of the transferring court. *Jones v.*

12   *GNC Franchising, Inc.*, 211 F.3d at 498. Significantly, as the party seeking transfer,

13   Defendant "bears a heavy burden of showing a clear balance of inconveniences to

14   it." *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994)

15   (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir.

16   1979)); *see also Invisible Stripes, LLC v. Virag*, No. C 09-01133 JSW, 2009 WL

17   1992125, at *3 (N.D. Cal. July 8, 2009) (noting defendant bears the burden on a

18   motion to transfer under § 1404). Moreover, a plaintiff's choice of forum is given

19   "great deference." *Invisible Stripes, LLC*, 2009 WL 1992125, at *4. As discussed

20   below, Defendant has not met its burden of showing that transfer of this action

21   would "serve the convenience of the parties and witnesses or the interests of justice"

22   so as to defeat the strong presumption in favor of Plaintiff's choice of forum.

23   **A.    Plaintiff is Entitled to His Choice of Forum**

24   Plaintiff is entitled to choose his forum. "[U]nless the balance [of interests] is

25   strongly in favor of the defendant, the plaintiff's choice of forum should rarely be

26   disturbed." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d

27   1109, 1131 (C.D. Cal. 2009) (quoting *Decker Coal Co. v. Commonwealth Edison*

28   *Co.*, 805 F.2d 834, 842 (9th Cir. 1986)).

1    The presumption in favor of Plaintiff's choice of forum is not diminished by

2    his decision to bring the case on a classwide basis. The presumption in favor of

3    Plaintiff's choice of forum is only reduced in class actions in which Plaintiff's

4    chosen forum is "purely fortuitous" and bears no connection to Plaintiff's or the

5    putative class' claims. *See, e.g.*, *Sonoda v. Amerisave Mortg. Corp.*, No. C-11-1803

6    EMC, 2011 WL 2653565, at *4 (N.D. Cal. July 6, 2011); *Holliday v. Lifestyle Lift,*

7    *Inc.*, No. C 09–4995 RS, 2010 WL 3910143 (N.D. Cal. Oct. 5, 2010); *see also* §

8    3848 Standard in Considering Transfer—Plaintiff's Privilege of Choosing Forum, 15

9    Fed. Prac. & Proc. Juris. § 3848 (4th ed.) ("The plaintiff's preference may also be

10   given less weight if the plaintiff sued in a district that has no obvious connection to

11   the case."). This is not such a case. Here, Plaintiff chose to file suit in his home

12   forum on behalf of a California class under California law. As such, the Central

13   District of California has a substantial connection to the claims at issue and

14   Plaintiff's choice of forum is afforded substantial weight. *See Sonoda*, 2011 WL

15   2653565, at *4 (Plaintiff's choice of forum entitled to great weight in putative class

16   action when one of the Plaintiffs resided in the Northern District and brought claims

17   on behalf of a California subclass under California law); *see also Roling v. E*Trade*

18   *Sec., LLC*, 756 F. Supp. 2d 1179, 1185 (N.D. Cal. 2010) (noting the reduced weight

19   on a plaintiff's choice of forum in class actions stems from forum shopping

20   concerns "especially when a representative plaintiff does not reside within the

21   district.")

22   **B.    North Carolina Is Not A More Convenient Forum**

23   In advocating for transfer, Defendant argues North Carolina would be a more

24   convenient forum because most of its employees are located there. Defendant's

25   argument is not persuasive. The presumption in favor of a plaintiff's choice of forum

26   renders transfer inappropriate "if the result is merely to shift the inconvenience from

27   one party to another." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D.

28   Cal. 2014). Moreover, "the relative ability of the parties to absorb the costs

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

associated with litigating in a distant forum is a valid consideration." *Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*, No. CV 03-5834-GHK VBKX, 2005 WL 4715213, at \*2 (C.D. Cal. Apr. 28, 2005); *see also Peterson v. Nat'l Sec. Techs.*, *LLC*, No. 12-CV-5025-TOR, 2012 WL 3264952, at \*5 (E.D. Wash. Aug. 9, 2012) ("[T]he balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it."); *Gelber v. Leonard Wood Mem'l For Eradication of Leprosy*, No. C 07-01785 JSW, 2007 WL 1795746, at \*4 (N.D. Cal. June 21, 2007) (weighing the parties' ability to absorb the costs of litigating in a distant forum). Here, Plaintiff (a minor) is located in this district, while Epic's corporate representatives are located in North Carolina. Transfer, then, would merely shift the inconvenience from Epic to Plaintiff, who is less able to absorb the costs and difficulty of litigating in a distant forum. Epic, a multinational corporation, can more easily bear the costs of litigating in a more distant forum than can Plaintiff, an individual (and a minor). *See In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011) ("[C]orporations are better-equipped than individuals to absorb increased litigation costs."); *Butner v. Banco Mercantil Del Norte, S.E.*, No. CV0801764SJORZX, 2009 WL 10672324, at \*2 (C.D. Cal. Apr. 7, 2009) ("Defendants are large corporations that are better able to defend themselves in an inconvenient forum than is [Plaintiff].").

Moreover, while convenience of the witnesses is considered, the significance of this factor diminishes when the witnesses are employees of one of the parties. *See Lax*, 65 F. Supp. 3d at 779 ("[T]he convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum"); *Gelber*, 2007 WL 1795746, at \*3 ("The convenience of Defendants' party witnesses are entitled to little weight because the witnesses are employees of the party seeking transfer, and Defendants will be able to compel their testimony at trial."); *U.S. v. Acad. Mortg. Corp.*, No. 16-

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER**

1    CV-02120-EMC, 2018 WL 4053484, at *5 (N.D. Cal. Aug. 24, 2018) ("Courts give

2    less consideration to the convenience of party witnesses or witnesses employed by a

3    party because these witnesses can be compelled by the parties to testify regardless of

4    where the litigation will occur."). Here, most or all of the relevant witnesses are

5    Epic employees. As such, Epic will surely be able to secure the appearance of

6    witnesses regardless of the location of the forum, diminishing the importance of the

7    convenience of the forum. Moreover, Plaintiff will agree to depose Epic's

8    employees in North Carolina. This, too, will lessen any inconvenience to Epic's

9    witnesses. *See Lax*, 65 F. Supp. 3d at 779 (noting plaintiffs agreed to depose

10   corporate representatives in the representative's home forum, "creat[ing] less of a

11   burden on defendants to litigate in the Northern District because defendants'

12   witnesses would only have to travel for trial."). Accordingly, the purported

13   inconvenience of travel to the Central District of California from North Carolina for

14   Epic's employees does not tip the scale against Plaintiff's chosen forum.

15          Similarly, the location of the documentary evidence does not justify the

16   transfer. "Given the reality of electronic communication and transmission, ease of

17   access to the evidence is a neutral factor" in 2019. *See Consumer Fin. Prot. Bureau*

18   *v. Nationwide Biweekly Admin., Inc.*, No. 15-CV-02106-RS, 2015 WL 4463790, at

19   *5 (N.D. Cal. July 21, 2015); *see also Lax*, 65 F. Supp. 3d at 780 (noting the

20   irrelevance of this factor in the digital age); *Simpson Strong-Tie Co., Inc. v. Oz-Post*

21   *Int'l, LLC*, No. 3:18-CV-01188-WHO, 2018 WL 3956430, at *8 (N.D. Cal. Aug. 17,

22   2018) ("[I]n the age of electronically stored information, '[t]he ease of access to

23   evidence is neutral because much of the evidence in this case will be electronic

24   documents, which are relatively easy to obtain in any district.'"); *Acad. Mortg.*

25   *Corp.*, 2018 WL 4053484, at *6 ("[G]iven today's technological advancements, the

26   ability to transfer electronic documents is generally not difficult or burdensome.").

27   Accordingly, this factor does not support transfer.  *See id*.

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER

1    In sum, considering all the relevant circumstances, the Eastern District of

2    North Carolina is not a more convenient forum so as to defeat the strong

3    presumption in favor of Plaintiff's choice of forum.

4    **C.      This Court Is Better Positioned to Decide Plaintiff's California**

5    **Claims**

6    Finally, this Court is most familiar with the governing law and this factor, too,

7    weighs against transfer. A North Carolina court is less likely to be familiar with

8    California law and California precedent. *See In re Ferrero Litig.*, 768 F. Supp. 2d at

9    1081 ("A California district court is more familiar with California law than district

10   courts in other states"); *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1085 (N.D. Cal.

11   2008) ("A court in the Northern District of California is more familiar with

12   California law than a court in the District of Arizona."). For these reasons, this

13   Court should decline to exercise its discretion to transfer this action to the Eastern

14   District of North Carolina.

15                              <u>**CONCLUSION**</u>

16   For the reasons stated above, Defendant's motion to compel arbitration or

17   transfer should be denied.

18   DATED: June 19, 2019              Respectfully submitted,

19                                     **PEARSON, SIMON & WARSHAW, LLP**

20

21                                     By:  */s/ Daniel L. Warshaw*

22                                            DANIEL L. WARSHAW

23                                     DANIEL L. WARSHAW (Bar No. 185365)

24                                        dwarshaw@pswlaw.com

25                                     **PEARSON, SIMON, &WARSHAW, LLP**
                                       15165 Ventura Boulevard, Suite 400

26                                     Sherman Oaks, California 91403

27                                     Telephone: (818) 788-8300
                                       Facsimile:  (818) 788-8104

28

909706.11                          25                          2:19-cv-01488-GW-E

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MELISSA S. WEINER (admitted *pro hac vice*)
 mweiner@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
ALEXANDER L. SIMON (Bar No. 305734)
 asimon@pswplaw.com
**PEARSON, SIMON, &WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008

JEFFREY KALIEL (Bar No. 238293)
 jkaliel@kalielpllc.com
SOPHIA GOLD (Bar No. 307971)
 sgold@kalielpllc.com
**KALIEL PLLC**
1875 Connecticut Ave. NW, 10th Floor
Washington, D.C.  20009
Telephone: (202) 350-4783
Facsimile: (202) 871-8180

*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION OR TRANSFER